## V. B. BOWERS v. BRYAN LUMBER COMPANY.

(Filed 17 May, 1910.)

**1. Principal and Agent—Scope of Authority—Surety Bond—Seal—Regular on Face—Innocent Stranger.**

A bond signed as surety by the agents of a surety corporation, the agents living and doing business in Tennessee as such agents, by means of which goods held under a warrant of attachment were released, is binding upon the surety company as principal, the acts of the agents being within the apparent scope of their authority; and the principal, having furnished its agents with the form of the bond, signed and sealed by it, awaiting only the signature and delivery of the agents for apparent validity, are also held liable thereon for having put it within the power of the agents to cause loss or disadvantage to innocent third persons.

**2. Principal and Agent—Judgment—Lower Court—Validity Presumed—Statement of Facts.**

Error in the judgment of the lower court will not be presumed on appeal, and when it appears that a surety bond under seal given by a surety company has been delivered for the purpose of vacating an attachment, and its execution appears to be sufficient, the judgment of the Superior Court, establishing its validity, will be sustained, and not declared void for the alleged want of authority of the agents in signing and delivering it, in the absence of any statement of facts by the lower court upon which its judgment was declared.

BOWERS *v.* LUMBER COMPANY.

### 3. Principal and Agent—Surety Bonds—Ratification.

A surety company by accepting the premium on a bond issued by its agents to vacate a warrant of attachment, ratifies the act of the agent and cannot be heard to contest the validity of the bond on the ground that its agents had therein exceeded their authority.

APPEAL from *Councill, J.,* at November Term, 1909, of MITCHELL.

The facts are sufficiently stated in the opinion of the Court.

*L. D. Love,* and *C. E. Greene* for plaintiff..
*Hudgins, Watson & Johnston* for defendant.

WALKER, J.    This was a civil action prosecuted by the plaintiff against the defendant for a debt of $1,650.    A warrant of attachment was levied upon 125,000 feet of lumber which belonged to the defendant, and while the property so levied upon was in the custody of the sheriff, the defendant filed with the clerk of the Superior Court a bond in the sum of $3,700, executed by the defendant as principal, and the Title Guaranty and Surety Company, by D. H. Willard and D. A. Vines, who professed to be its agents.    This bond was approved by the clerk of the Superior Court and filed as a part of the record, and thereupon the attachment was dissolved and the lumber was released and shipped out of the State by the defendant. At July Term, 1909, of the Superior Court, when the case was called, it appeared that the plaintiff had filed a verified complaint, and the defendant had filed no answer.    The court rendered judgment by default in favor of the plaintiff and against the defendant, for the amount of the debt and the costs of the action, and also against the Title Guaranty and Surety Company for the amount of its bond, to be discharged upon the payment of the judgment, that is, the debt and costs.

At November Term, 1909, the Title Guaranty and Surety Company moved to strike out or set aside the said judgment, so far as the same affected the said company, and assigned as the ground for its motion that D. H. Willard and D. A. Vines were the agents of the said company in Tennessee and did not reside in this State, but at. Johnson City in the said State of Tennessee, and that Willard and Vines acted without authority in executing the said bond.    Affidavits were filed by the parties and an order was granted staying the execution until the motion of the Guaranty and Surety Company could be heard. At the hearing of this motion, *Judge Councill* rendered a judgment denying the same and dissolving the restraining order; but in his judgment there are no findings of fact, nor does it

appear anywhere in the record that the appellant requested the
judge to find and state the facts. In what is termed a case on
appeal, there appears to have been some colloquy between the
court and counsel as to the ground of the motion and as to the
reasons why the Guaranty and Surety Company was entitled
to have the judgment against it vacated; but there are no find-
ings of fact which relate to the authority of Willard and Vines
to act in behalf of the said company in the execution of the
bond by it as surety. This Court ordered the original bond to
be sent up, in order that it might ascertain, from an inspection
of it, whether the corporate seal of the company had been
affixed thereto, and we find, upon an examination of the bond,
that the corporate seal of the company had been affixed.

In the present state of the case we are of the opinion that
the Guaranty and Surety Company is bound by the act of Wil-
lard and Vines, because the corporate seal was affixed to the
bond, and in the absence of any statement of facts we must
presume that his Honor found such facts as would support his
judgment, and, therefore, found that Willard and Vines were
invested with the necessary authority to execute the bond. We
do not presume that error was committed in the court below,
and the burden is on the appellant to show error.

The Guaranty and Surety Company entrusted Willard and
Vines with a bond, to which its corporate seal had been affixed,
and it was licensed to do business, that is, to execute an indem-
nity bond, in this State. When this was done, the Guaranty
and Surety Company put it in the power of Willard and Vines
to induce others to believe that they had the power and author-
ity to execute a bond in its behalf as surety, even if the signa-
tures of the said agents were necessary to make it a valid bond
as against the company after it had thus affixed its corporate
seal and its corporate name had been signed to the bond.

This case is not, in principle, unlike *Havens v. Bank,* 132
N. C., 214, in which it appeared that spurious bank certificates
had been issued by the cashier of the defendant bank, they hav-
ing been left with him after having been signed in blank by the
president and secretary. In that case, and with reference to
its facts, we held that the bank was legally responsible for the
fraudulent acts of its cashier, and that the mere fact that he
was not in the performance of his master's business, but was
acting outside of the scope of his agency, did not alter the case
nor change the result, for "this would be true as to all fraud-
ulent acts and as to all acts done not strictly within the line of
duty. The correct principle is that it will be quite sufficient
to charge the employer with liability, if all the acts of the

BOWERS *v.* LUMBER COMPANY.

employee are done within the apparent, though not real, scope
of his agency." We further said that as the certificates had
been signed by the president and delivered to the cashier, the
bank had given to the latter the power to commit the fraud, and
must answer for its negligent act, upon the principle that
"whenever one of two innocent persons must suffer by the act
of a third, he who has enabled such third person to occasion the
loss must sustain it." *Lickbarrow v. Mason,* 2 T. R., 70. It
was said by *Lord Holt,* in *Hearn v. Nichols,* 1 Salk., 289: "For
as somebody must be a loser by this deceit, it is more reasonable
that he who employs and puts a trust and confidence in the
deceiver should be the loser, than a stranger." In *R. R. v.
Kitchin,* 91 N. C., 39, we held that "where one of two persons
must suffer loss by the fraud or misconduct of a third person,
he who first reposed a confidence or by his negligent act made
it possible for the loss to occur, must bear the loss." The prin-
ciple is well stated in the case of *R. R. v. Bank,* 60 Md., 36, as
follows: "It may be conceded, and was doubtless the case, that
the agent had no authority in fact to issue such certificate; he
had no real authority as between himself and his principal, or
other parties cognizant of the facts, for doing the particular
acts complained of, but the company by its own act and, as it
turned out, misplaced confidence, placed the agent in the posi-
tion to do, and procure to be done, that class of acts to which
the particular act in question belongs; and in such case where
the particular act in question is done in the name of and
apparently in behalf of the principal, the latter must be an-
swerable to innocent parties for the manner in which the agent
has conducted himself in doing the business confided to him.
Upon no other principle could the public venture to deal with
an agent. In such case the apparent authority must stand as
and for real authority." And again: "Where he issued such a
certificate and delivered it to a third party, who acted without
knowledge and in good faith, paying value for it, such party
had the right to act upon the presumption that the representa-
tions of such certificates were truthful, and not false and fraud-
ulent. Having confided to him the said trust of executing the
business, the agent was held out to the public as competent,
faithful and worthy of confidence; and though he deceived both
his principal and the public, by forging and issuing false cer-
tificates, it is but reasonable that the principal, who placed him
in the position to perpetrate the wrong, should bear the loss."
We think the principle is also well supported by the reasoning
of the Court in *McNeill v. Bank,* 46 N. Y., 325.

Willard and Vines, who professed to act as agents of the cor-

poration in executing the bond for it as surety, must be taken, under the facts and circumstances of this case, so far as they appear, to have had full authority to do and perform the act which the Guaranty and Surety Company now attempts to repudiate, for they were acting apparently within the scope of their authority, the company having placed in their possession evidence which would indicate to an innocent person dealing with them that they had the necessary power to act as they did. It is sufficient to charge the principal, if his agent is acting within the apparent scope of his authority. *Bank v. Hay,* 143 N. C., 326.

We cannot examine the affidavits with a view to finding the real facts in this case, as it has been well settled that the facts upon a motion to set aside a judgment must be found by the court below. We said, in *Oldham v. Sneed,* 80 N. C., 15, that "in the absence of any facts found, we only see from the case sent up that the judge refused to vacate the judgment, but why he did so, or whether with or without any mistake or misapplication of the law, cannot be seen."

The Guaranty and Surety Company received the premium or consideration for this indemnity bond, and, having done so, it was put on inquiry as to whether Willard and Vines had acted within the scope of their authority, and in such a case it must be held to have ratified what they had done. It is not permissible, nor is it sound morality, for the company to accept the benefit of what they did in executing the bond for it as surety, and when a liability is incurred on the bond, to repudiate what their alleged agents had done in their behalf.

We find no error in the record.

Affirmed.