G. W. HUNTLEY, JR., VIVIAN S. HUNTLEY, JACK F. LONGEST, CLARA W. LONGEST, ALEX W. LEWIS, PATSY M. LEWIS, STEVE BEACHAM, JR., HILDA BEACHAM, FISH MEAL CO., BY HARVEY W. SMITH, PRES., HAROLD I. HOLBROOK, MARGARET H. HOLBROOK, NORVIE W. DAY, PEARL DAY, BILLY J. BOLES, MARTINA BOLES, RAYMOND A. TAYLOR, MARGIE B. TAYLOR, AUBREY ARVIS McGEHEE, ROWENA S. McGEHEE, A. B. WADE, LEONA S. WADE, CECIL WILLIS, DOLLY WILLIS, EMMETT WILLIS, EVELYN WLLIS, SAM GIBBS, JOYCE GIBBS, CATHERINE N. PIGOTT, RUTH GIBBS, LAURA GIBBS, L. C. DICKINSON, LETHA E. DICKINSON, ARTHUR STAFFORD, JR., MINNIE P. STAFFORD, C. V. ANDREWS, MRS. C. V. ANDREWS, TULL E. WILLIAMS, DAVID R. HOLCOMB, GRACE MARIE HOLCOMB, SALVATORE J. PALAZZO, DALTON G. EUBANKS, HILDA EUBANKS, MRS. SAMUEL E. PINER, W. ROY WILLIS, ZULEKIA N. WILLIS, M. D. PITTMAN, EMMA PITTMAN, RAY PITTMAN, FRANCES PITTMAN, DICK CONWAY, EVA CONWAY, MAMIE C. GILLIKIN, GLADYS JONES, NORMA E. JONES, EARL B. JONES, HORACE LEWIS, PHEARLIE LEWIS, MRS. BESSIE KING, CHARLIE

T. STYRON, MRS. CHARLIE STYRON, ROY LANEY, MRS. ROY LAN-
EY, CHARLES C. PITTMAN, MRS. CHARLIE C. PITTMAN, MAMIE
LAUGHINGHOUSE, J. B. MORTON, JOHN S. MASON, MIRIAM MA-
SON, PERCY E. GARNER, LEDREW NORMAN, RUBY NORMAN, R.
W. SAFIT, C. A. ROBINSON, BESSIE ROBINSON, T. P. ALLEN, MAR-
GARET ALLEN, ALONZO WILLIS, DELLA WILLIS, MRS. BERYL
TOSTO, M. P. WILLIAMS, MRS. M. P. WILLIAMS, G. W. COLLINS,
JR., H. B. WHITEHURST, THURSTON HILL, EVA WILLIS HILL, R.
W. SAFRIT, JR., R. C. SLATER, IRENE SLATER, B. L. JONES, CAR-
RIE LEE HANCOCK, HOWARD C. JONES, JR., MRS. JACK WIND-
LEY, HOWARD JONES, SR., ROY CLEMMONS, MARIE CLEMMONS,
RUSSELL R. KLEMM, PATSY H. KLEMM, S. T. VICK, ELIZABETH
VICK, K. E. JOHNSON, EILEEN C. JOHNSON, LENNIS MORRIS,
CARL CHADWICK, JR., LOUISE P. CHADWICK, EARL LEWIS, LYDE
T. LEWIS, FRED DAVIS, MRS. FRED DAVIS, N. A. AVERY, EMMA
AVERY, C. M. VELLINES, EVELYN T. VELLINES, EARL TAYLOR,
MARIE TAYLOR, W. E. ROLISON, IDA ROLISON, H. W. SMITH,
ROBERT L. SMITH, LUCILLE S. SMITH, FRANCES P. ARTHUR, AN-
NIE E. ARTHUR, GEORGE C. MORRIS, DOLLIE O. MORRIS, GASTON
SIMPSON, MINNIE S. SIMPSON, JAMES H. MILLER, SUSAN N. MIL-
LER, ROBERT M. WHITE, ANN WHITE, JAMES L. RANGE, NINA
RANGE, SANFORD C. WHITE, EVELYN WHITE, JOSEPHINE S.
McCABE, JULIUS TAYLOR, LEONDA TAYLOR, ROXIE TAYLOR,
WALTER GOODWIN, JULIA A. GOODWIN, JETHRO H. QUIDLEY,
LILA D. KIRK, MARGARET RUMER, F. E. KIRK, JEAN D. MOR-
RISON, JOHN D. WEBB, BURL DENNIS, OLLIS LEWIS, E. C. RHUE,
A. J. RHEA, J. R. BALL, BERKLEY SIMPSON, RUTH G. BALL, MRS.
BERKLEY SIMPSON, JOHN CHADWICK, JOHN P. BUTLER, RUTH
L. BUTLER, W. L. RUDDER, LENA H. RUDDER, N. C. CORBETT,
MRS. N. C. CORBETT, D. P. CLAWSON, MRS. DAVE CLAWSON, JOHN
C. MEASE, CATHERINE MEASE, L. Y. SAFRIT, MRS. L. Y. SAFRIT,
JOHN JOHNSON, EVA JOHNSON, W. T. LEWIS, SR., EUNICE M.
LEWIS, JACK O. WILLIAMS, EVIE K. WILLIAMS, JOHN A. LUPTON,
MILDRED E. LUPTON, R. W. ADAMS, ANNE ADAMS, GEORGE H.
AUTRY, BESSIE AUTRY, O. G. GASKILL, CLEO GASKILL, MARY E.
JARVIS, THOMAS J. ADAMS, JEAN B. ADAMS, N. A. McNEILL,
ELEANOR C. McNEILL, FREDERICK E. SMITH, PAULINE M. SMITH,
P. N. THOMAS, JR., MRS. PHIL THOMAS, JR., GUY L. BROOKS,
GEORGIA W. BROOKS, WILLIAM I. LOFTIN, JR., DOROTHY LOF-
TIN, ERIC HILL, LOUISE HILL, EUGENE GARNER, INA G. GAR-
NER, DR. LUTHER FULCHER, ALGER F. FULCHER, PETITIONERS, v.
W. H. POTTER, MAYOR; WILLIAM DAVIS, D. C. FARRIOR, W. R.
HAMILTON, MATH CHAPLAIN, BERTIE BROOKS, COMMISSIONERS
OF THE TOWN OF BEAUFORT; AND THE TOWN OF BEAUFORT, A MUNICI-
PAL CORPORATION OF THE STATE OF NORTH CAROLINA, RESPONDENTS.

(Filed 22 November, 1961.)

1. **Municipal Corporations § 2—**

Upon review in the Superior Court of a municipal annexation ordinance
enacted pursuant to Article 36, Subchapter VI, Chapter 160, the record
of the proceedings, including the report and annexation ordinance, must

show *prima facie* complete and substantial compliance with the Act as a condition precedent to the right of the municipality to annex the territory.

**2. Same—**

Where, upon review in the Superior Court of an annexation ordinance, the record of the proceedings shows *prima facie* that there has been substantial compliance with the requirements and provisions of the annexation statute, the burden is upon petitioners to show by competent evidence failure on the part of the municipality to comply with the statutory requirements as a matter of fact, or irregularity in the proceedings which materially prejudice the substantive rights of petitioners.

**3. Public Officers § 3—**

As a general rule, it will be presumed that a public official in the performance of an official duty has acted in good faith and in accordance with the law and the authority conferred on him, and the burden is upon the party asserting the contrary to overcome the presumption by competent and substantial evidence.

**4. Municipal Corporations § 2—**

A statement in an annexation ordinance that the area to be annexed is in the process of being developed for urban purposes and that more than 60 per cent of the area is in use for residential, commercial, industrial, governmental or institutional purposes, and at least 60 per cent of the total acreage, not counting the acreage so used, consists of lots and tracts five acres or less in size, does not meet the requirements of G.S. 160-453.4, the statement being a mere conclusion without specific findings or showing on the face of the record as to the method used by the municipality in making its calculations or any showing as to the present use of any particular tract.

**5. Same—**

Where the record discloses the plans of the municipality for extending municipal services to the area annexed, itemizing the cost, and that such cost would be obtained from current taxes, the record supports a finding by the court of compliance with G.S. 160-453.3, and such finding will not be disturbed in the absence of evidence to the contrary of sufficient weight to overcome the *prima facie* presumption of regularity.

**6. Municipal Corporations § 16—**

Where a municipality annexes territory served by private water or sewer lines, the owners of such lines may not recover the value thereof from the municipality in the absence of provisions for payment by contract or ordinance unless the municipality appropriates such private lines and controls them as proprietor, and the mere extension of the city limits to include such lines or the voluntary maintenance of such lines by the city does not amount to an appropriation of such lines by the municipality.

**7. Municipal Corporations § 2—**

An annexation ordinance may not be attacked on the ground that the municipality has no plans to purchase or finance the purchase of private water and sewer systems existing in the annexed territory, since the mere

existence of such private systems within the territory to be annexed does not compel the city to purchase or acquire ownership of them.

**8. Same—**

Annexation of territory by a municipality is a legislative and not a judicial act, and in the absence of statutory directive, the court, on appeal from an annexation ordinance, cannot divide the territory and annex a part thereof and refuse to annex the remainder.

**9. Same—**

Where an order is issued restraining the operation of an annexation ordinance as to the entire area pending review, G.S. 160-453.6 (e) has no application, since the statute permits the court to approve the annexation of a part of the proposed area only when no question for review has been raised as to such part.

**10. Same—**

The Superior Court may permit, under G.S. 160-453.6(h), an annexation ordinance to be effective with respect to a part of the area proposed only when there is no appeal in regard to such part and the municipality agrees to the order for such partial annexation.

APPEAL by petitioners from *Cowper, J.,* at Chambers on 21 June 1961 in CARTERET.

The town of Beaufort is a municipality having a population of less than 5,000 according to the 1950 census. The governing board of the municipality in October 1959 began to consider, pursuant to G.S. 160-453.1 to G.S. 160-453.12, the annexation of an area adjacent to and north and east of the boundaries of the town.

On 26 October 1959 the governing board adopted a resolution declaring its intent to consider the annexation. Notice was published announcing a public hearing to be held on 30 November 1959. More than 14 days prior to the public hearing date there was filed in the office of the town clerk a report setting forth plans for extension of services to the area being considered for annexation.

The portions of the report pertinent on this appeal are summarized in part and quoted in part, as follows (numbering ours):

(1). "The area to be annexed is in the process of being ·developed for urban purposes and . . . more than 60% of same is in use for residential, commercial, industrial, institutional or governmental purposes, and that at least 60% of the total acreage, not counting the acreage used . . . for commercial, industrial governmental or institutional purposes, consists of lots and tracts five (5) acres or less in size. . . ."

(2). The town does not own a water system. Carolina Water Company, a corporation, is under contract with the town to supply water. It has water mains in much of the area to be annexed, and will establish other mains in accordance with consumer demand.

(3). The town's sewerage systems are based on gravity outfall toward navigable waters bordering the town. These systems have created a nuisance by reason of the depositing of raw sewerage in navigable waters, and the town has employed engineers to make plans for a general sewerage system of an approved type to serve the town and the area to be annexed, to be constructed in the future to replace the systems now in use. ". . . (T)he Board at this time does not deem the extension of the present sewer outfall . . . to be proper, economical or expedient." There is a privately owned sewer system in a portion of the area to be annexed. It is of the same type as those now being maintained by the town. If the privately owned system "is taken over by the municipality following annexation . . . an effort by arbitration to determine the value of this system shall be effected and . . . payment shall be made to those parties who are the true owners . . . , if their ownership is established." Much of the area to be annexed is served by septic tanks, and the town will provide equipment and two additional town employees for pumping out and cleaning septic tanks. The town will maintain all existing sewerage systems in the area to be annexed pending the installation of a new system.

(4). The town's fire-fighting equipment, herein described, is entirely adequate for protection of the area to be annexed, and is adequately manned. The water company, under its contract, will establish 22 additional fire hydrants at the points herein designated, and the fire alarm systems will be extended to the area to be annexed and boxes placed at 8 locations herein designated. Pending completion of hydrant and fire alarm extensions a "dummy box system" will be effected and fires will be reported by telephone.

(5). "Street Maintenance: The to-be annexed area will require 15.6 miles of mowing; 3½ miles of grading and would require the repair and refurnishing of a grader already the property of the town, hydraulic cylinders for one dump truck and one tractor mower." Dual use of personnel for street work and septic tank cleaning will be effected.

(6). The cost of extension of municipal services to the area will be $9,329.00. ". . . (T)he necessary revenues to pay this expense will be effected from current tax collections."

The public hearing was held 30 November 1959, at which the foregoing report was explained. Statements both for and against annexation were heard.

At a regular meeting of the governing board of the town on 11 January 1960 an ordinance was adopted annexing the area referred to in the report and specifically described in the ordinance, and extending the limits of the town to include the described area. The ordi-

nance declared the effective date of annexation to be 1 March 1960. The contents of the report heretofore set out were incorporated in the ordinance in part verbatim and in part by reference.

Within 30 days following the adoption of the annexation ordinance more than 200 owners of property within the annexed area signed a petition, which was verified by oath of one of them, and caused it to be filed in the superior court of Carteret County. The petitioners appealed from and sought review of the action of the governing board. The petition alleges that the petitioners believe they will suffer material injury by failure of the municipality to comply with the procedures required by law, and that the requirements and provisions of G.S. 160-453.3 and G.S. 160-453.4 had not been complied with. Nine exceptions are set out and specified in considerable detail. The pertinent exceptions are discussed in the opinion. The petition prays that it be treated as an affidavit of the facts therein stated, temporary injunction be granted, the annexation proceedings be reviewed, and the annexation ordinance be declared null and void.

On 26 January 1960 Bundy, J., entered an order, on motion of petitioners, enjoining respondents from putting the annexation ordinance into effect pending the outcome of the review.

The cause came on for review before Cowper, J., on 21 June 1961. ". . . (A)fter reading the petition (offered as an affidavit by petitioners, objection by defendants overruled), the ordinance for annexation and the report setting forth plans as to services to (the annexed area), the petitioners offered as evidence that portion of the report . . . as it related to sewerage; whereupon petitioners rested. . . ."

The respondents offered evidence tending to show that in a relatively small segment (of the annexed area), lying generally on both sides of Ann Street, there is a sewerage system, not owned by the town, which was installed by Carteret Lumber Company a great many years ago. The area served by this sewerage system is specifically described in Judge Cowper's judgment and designated "Tract No. One."

Respondents also offered evidence tending to show that the town's sewerage system serves a small territory (within the annexed area), generally in the angle between Highway 70 and Lennoxville Road; and that another sewerage system, not owned by the town, lies in the Hancock Park area to the west of Highway 70 and within the annexed area, and was installed and paid for "by the people who reside in the area." The two territories referred to in this paragraph are specifically described, as a single tract, in Judge Cowper's judgment and designated "Tract No. Two."

In rebuttal, petitioners offered the testimony of a resident of "Tract No. One," tending to show that Carteret Lumber Company installed

the sewerage system in this tract in "the late 1920s," and that he paid "his. pro rata portion or use of the sewer," amounting to $10.00 or $15.00.

The court found facts, among others the following:

"7. That the Board of Commissioners has found as a fact and incorporated same in said ordinance that the said area for annexation is developed for urban purposes and that more than sixty (60%) per cent of the total number of lots and tracts of the area at the time the proceeding for this annexation began were used for residential, commercial, industrial, institutional or governmental purposes and that said area is subdivided into lots and tracts such that at least sixty (60%) per cent of the total acreage, not counting the acreage used at the time of the annexation for commercial, industrial, govermental or institutional purposes consists of lots and tracts five (5) acres or less in size;

"8. The Court further finds that the plans for extending municipal services to the to-be annexed area embraces each major municipal service performed within the respondent municipality at the time of annexation except sewerage and that, with the exception of sewerage, the plans for extending said services are ample, sufficient and complete. That the plans for extending sewerage lines into the to-be annexed area are not shown in the report setting forth plans as to services and, in fact, the report does not consider the extension of sewerage outfalls necessary for reasons as contained therein;

"9. That the Court finds that certain portions of said area are already served as to sewage facilities on a basis equivalent to that already in existence in the respondent municipality and that said areas are as follows:" Here tracts One and Two above referred to are set out by boundary descriptions. These tracts are relatively small portions of the area described in the annexation ordinance.

The court's conclusions of law and judgment are as follows:

"1. That the petition filed herein does not explicitly state what exceptions are taken to the action of the governing board of the respondent and what relief the petitioners seek as to individual petitioners except as to the failure of the respondent municipality to provide in its plan for extension of sewerage services in the to-be annexed area;

"2. The Court concludes that the petition fails to show how the alleged failure of respondent Town to comply with the procedures set forth in this part or to meet the requirements set forth in G.S. of N.C. 160-453.4 materially affect the individual property of the petitioners except as to the provisions as to sewerage facilities;

"3. The Court further concludes that the respondent municipality has fully complied with the requirements of the ·Act as it relates to

that portion of the to-be annexed area described in Finding of Fact #9 above; and the Ordinance of January 11, 1960, is affirmed as to these areas and these areas are hereby decreed to be annexed as a part of the municipality of the Town of Beaufort pursuant to said Ordinance and subject to the report setting forth plans as to services as to annexed area as same relates to said area.

"4. That the Ordinance should be, and same is hereby remanded to the Board of Commissioners for amendment of the plans providing sewerage facilities only to the area described as 'the annexed area,' excepting, however, those areas of same described in Findings of Fact #9 above, and the said Board of Commissioners shall cause to be filed an amendment to its report for plans as to services as to sewerage facilities within ninety (90) days in the Office of the Clerk Superior Court of Carteret County; and that, if it shall fail to so file said amendment within said time provided, then the Ordinance as to said area, excepting the areas described in Finding of Fact #9 above shall be null and void.

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that those areas described in Finding of Fact #9 above are hereby declared to be annexed to and a part of the Town of Beaufort as of the date of this judgment; and that the respondent municipality shall cause an accurate map of such annexed territory, together with a copy of an amended ordinance declaring said area to be annexed, to be recorded in the Office of the Register of Deeds of Carteret County;

"IT IS FURTHER ORDERED that the area to be annexed, excluding the areas above described, shall immediately become subject to the provisions of remand set forth hereinabove."

Petitioners "residing in" Tracts One and Two appealed and assigned errors.

*Gene C. Smith for petitioners, appellants.*

*C. R. Wheatly, Jr. and Thomas S. Bennett for respondents, appellees.*

MOORE, J. Petitioners contend that the report, prepared by the municipality pursuant to G.S. 160-453.3, which was made a part of the annexation ordinance, is insufficient on its face (1) to show that the area to be annexed is "developed for urban purposes," (2) to show that the municipality plans to extend major municipal services, including sewerage, fire protection and street maintenance, to the area to be annexed "on substantially the same basis and in the same manner as such services are provided" within the town, and (3) to show

that adequate provision has been made for financing service extensions. Petitioners further contend that it was incumbent on the municipality, and the municipality failed, to offer evidence at the review hearing in superior court that it is able to carry out its plans with respect to extension of services and that the plans comply with statutory requirements. In short, petitioners contend that the municipality, as a condition precedent to the right to annex, must file a report showing on its face strict compliance with statutory requirements, and that upon review in superior court has the burden of sustaining the regularity, adequacy, veracity and validity of the report and annexation ordinance by competent evidence. Petitioners point out that the municipality offered no evidence in support of the record and procedures except some testimony with respect to sewerage systems in Tracts One and Two, and they insist that the municipality has failed to carry the burden of proof and that the annexation ordinance should have been declared null and void. Thus, at the threshold we are confronted with the question: Who has the burden of proof in a superior court review of annexation records and procedures?

"A municipal corporation or its corporate authorities have no power to extend its boundaries otherwise than provided for by legislative enactment or constitutional provision. Such power may be validly delegated to municipal corporations by the legislature, and when so conferred must be exercised in strict accord with the statute conferring it." 37 Am. Jur., Municipal Corporations, s. 24, pp. 640-1. See Anno: 64 A.L.R., Municipal Boundaries — Power to Extend, pp. 1341-1354. "The only discretion given to the governing board of . . . municipalities is the permission and discretionary right to use this new method of annexation (Art. 36, Subchapter VI, Chapter 160, General Statutes of North Carolina) provided such boards conform to the procedure and meet the requirements set out in the Act as a condition precedent to the right to annex." (Parentheses added.) *In Re Annexation Ordinances,* 253 N.C. 637, 647, 117 S.E. 2d 795. In the procedures established by the Act, including the report of plans for extending services and the annexation ordinance, the governing board must comply with and conform to statutory provisions and requirements, and the record of the annexation proceedings must show *prima facie* complete and substantial compliance. Substantial compliance means compliance with the essential requirements of the Act. *People v. Omen,* 124 N.E. 860, 863. If the record of annexation proceedings on its face fails to show substantial compliance with any essential provision of the Act, the superior court upon review must remand to the governing board for amendment with respect to such non-compliance. G.S. 160-453.6(f), (g). The court itself is without authority to amend

the report, ordinance or other part of the record. This is true even if evidence is presented which justifies amendment. "The annexation of territory to a municipal corporation is a legislative function which may not be delegated to a court. . . ." 37 Am. Jur., Municipal Corporations, s. 25, p. 641.

However, where an appeal is taken from the annexation ordinance and a petition has been filed, pursuant to G.S. 160-453.6, requesting review of annexation proceedings, and where such proceedings show *prima facie* that there has been substantial compliance with the essential provisions of the Act, the burden is upon petitioners to show by competent evidence failure on the part of the municipality to meet requirements of G.S. 160-453.3 or G.S. 160-453.4 as a matter of fact, or irregularity in proceedings which materially prejudice the substantive rights of petitioners. The burden is upon petitioners in such case by reason of the presumption "that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." *Construction Co. v. Electrical Workers Union,* 246 N.C. 481, 488, 98 S.E. 2d 852. Accord: *In Re Housing Authority,* 233 N.C. 649, 656, 65 S.E. 2d 761; *Kirby v. Board of Education,* 230 N.C. 619, 627, 55 S.E. 2d 322. ". . . (I)t is, as a general rule presumed that a public official properly and regularly discharges his duties, or performs acts required by law, in accordance with the law and the authority conferred on him, and that he will not do any act contrary to his official duty or omit to do anything which such duty may require." 31 C.J.S., Evidence, s. 146, pp. 800-802. "The presumption . . . applies in favor of the acts of . . . a city council. . . ." *ibid.,* p. 812. "It is . . . presumed, as an element of the general rule, that a public officer, in discharge of his official duties, . . . acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." *ibid.,* pp. 804-806. "The presumption of regularity of official acts is rebuttable by affirmative evidence of irregularity or failure to perform duty, but the burden of producing such evidence rests on him who asserts unlawful or irregular conduct. The presumption, however, prevails until it is overcome by . . . evidence to the contrary. . . . Every reasonable intendment will be made in support of the presumption. . . ." *ibid.,* pp. 808-9.

Petitioners except to the court's finding of fact 7 and assert that the annexation ordinance contains no specific findings that the area to be annexed is developed for urban purposes. We agree. The report of plans for extending services states: ". . . the area to be annexed is in the process of being developed for urban purposes and, as such, more than 60% of same is in use for residential, commercial, industrial, in-

stitutional or governmental purposes and that at least 60% of the total acreage, not counting the acreage used on the aforementioned date for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five (5) acres or less in size." This statement is repeated almost verbatim in the annexation ordinance, and there is no other finding in the record as to whether or not the area to be annexed is developed for urban purposes. The statement is a general conclusion couched in the wording of the statutory definition of "area developed for urban purposes," as set out in G.S. 160-453.4(c). It merely adopts the definition as the only showing relative to the nature of the area. The Act requires that the annexation ordinance contain *"specific findings* that the area to be annexed meets the requirements of section 160-453.4." (Emphasis added.) See G.S. 160-453.5(e) (1). It is provided in G.S. 160-453.10 that: "In determining degree of land subdivision for purposes of meeting the requirements of § 160-453.4, the municipality shall use methods calculated to provide reasonably accurate results. In determining whether the standards set forth in § 160-453.4 have been met in appeal to the superior court under § 160-453.6, the reviewing court shall accept the estimates of the municipality: . . . (2) As to degree of land subdivision, if the estimates are based on an actual survey, or on county tax maps or records, or on aerial photographs, or on some other reasonably reliable source, unless the petitioners on appeal show that such estimates are in error in the amount of five per cent (5%) or more." The ordinance in the instant case makes no reference to the method used by the municipality in making its calculations. Nor does it state what the percentages of development actually are. The map appearing in the record does not show on what lots or tracts buildings or other establishments are located. "Used for residential purposes" means any lot or tract of five acres or less in size on which is constructed a habitable dwelling unit. G.S. 160-453.9(2). Furthermore, the map shows no acreage computations. There are no specific findings and no showing on the face of the record to support the general conclusion stated. Therefore, the record on its face fails to show substantial compliance with statutory requirements that there be specific findings that the area to be annexed is developed for urban purposes. Because of such failure the annexation ordinance should have been remanded to the governing board for compliance and, if necessary, amendment of boundaries. G.S. 160-453.6(g) (2).

Petitioners except to the following portion of the court's finding of fact 8: ". . . the plans for extending municipal services to the to-be annexed area embraces each major municipal service performed within the respondent municipality at the time of the annexation except

sewerage and . . . , with the exception of sewerage, the plans for extending said services are ample, sufficient and complete." Petitioners insist that the plans for extension of fire protection, street maintenance and sewerage to the area to be annexed do not provide for such extensions "on substantially the same basis and in the same manner as such services are provided" within the municipality, and, further, that the report and ordinance do not "set forth the method under which the municipality plans to finance extension of these services into the area to be annexed."

We have in our statement of facts briefly summarized the plans for these extensions of services. These plans are set out in the record fully and in detail. Costs are itemized and provision made for needed revenues from current tax collections. As to financing, and extension of fire protection and street maintenance, the report and ordinance show *prima facie* substantial compliance with the requirements of the Act. But petitioners contend they have offered evidence which shows the insufficiency of these plans and proposals. The only evidence offered by petitioners, other than the rebuttal evidence referred to in our statement of facts, is the petition for review. It was admitted in evidence as an affidavit over the objection of respondents. The admissibility of the petition as evidence is not before us on this appeal. It is apparent, however, that the court did not consider it of sufficient weight to overcome the *prima facie* showing of the report and annexation ordinance. In the making of the challenged finding of fact we perceive no error.

In findings of fact 8 and 9 the court states: ". . . the plans for extending sewerage lines into the to-be annexed area are not shown in the report setting forth plans as to services and, in fact, the report does not consider the extension of sewerage outfalls necessary for reasons as contained therein; . . . the Court finds that certain portions of said area are already served as to sewage facilities on a basis equivalent to that already in existence in the respondent municipality and that said areas are as follows:" Here Tracts Nos. One and Two are specifically described. As already indicated, they are small portions of the total area the municipality desires to annex. The court concluded that the municipality had fully complied with the requirements of the Act with reference to Tracts One and Two, affirmed the ordinance with respect to these tracts, decreed that they be annexed to and become a part of the town of Beaufort as of the date of the judgment, June 21, 1961. As to the remainder of the area to be annexed the ordinance was remanded to the governing board of the municipality for "an amendment to its report for plans as to services as to sewerage facilities. . . ."

The appellants herein reside in tracts One and Two and except to the court's conclusion that the municipality has fully complied with the requirements of the Act with respect to these tracts. Appellants contend that there is no showing in the report and ordinance, or otherwise, that the town plans to purchase the private sewerage systems in tracts One and Two, or has plans for financing the purchase of these systems, but that "it is incumbent on a municipality to purchase sewer systems taken into the municipal area as set forth in *Jackson v. Gastonia,* 246 N.C. 404, and *Mfg. Co. v. Charlotte,* 242 N.C. 189."

In the report the municipality proposes to "maintain all sewerage systems in use," and states: ". . . (I)n the event that the present privately owned sewerage system in a portion of the annexed area is taken over by the municipality following annexation . . . an effort by arbitration to determine the value of this system shall be effected and . . . payment shall be made to those parties who are the true owners of said system, if their ownership is established."

The *Gastonia* and *Charlotte* cases relied on by appellants have no application to the actual situation here presented. In the *Gastonia* case it was stipulated that the City of Gastonia had "taken over, used and controlled . . . water and sewer lines to the same extent as if said lines had been installed by defendant (City) originally." It was held that plaintiffs were entitled to recover on *quantum meruit.* In the *Charlotte* case the City contracted orally to purchase plaintiff's sewer line when the area was annexed. This Court declared that plaintiff was entitled to recover on *quantum meruit* even though the contract was void because not in writing.

Where a private owner installs water or sewer lines at a time when there is a City ordinance which provides that such lines shall become the property of the City if the territory served thereby is annexed, the private owner may not recover therefor by reason of a subsequent annexation of the territory and a taking over of the lines by the City. *Spaugh v. Winston-Salem,* 234 N.C. 708, 68 S.E. 2d 838. Where there is a contract and agreement between the private owner of water or sewer lines and a City, the rights of the parties are to be determined, upon annexation, by the terms of the contract. *Styers v. Gastonia,* 252 N.C. 572, 114 S.E. 2d 348; *Honey Properties, Inc. v. Gastonia,* 252 N.C. 567, 114 S.E. 2d 344.

Where there is no contract or municipal ordinance involved and the territory served by private water or sewer lines is annexed to a municipality, the owner of the lines may not recover the value thereof from the municipality unless it appropriates them and controls them as proprietor. The bare extension of the city limits does not amount to a wrongful taking or appropriation of the lines. Maintenance as a

voluntary act on the part of the city does not amount to a taking of the property. *Farr v. Asheville,* 205 N.C. 82, 170 S.E. 125.

In the instant case the town of Beaufort proposed, as an extension of service, to maintain the sewerage systems in question. Its report recognizes that they are privately owned, and declares that payment will be made if they should be taken over by the municipality and if the identity of the owners can be determined. There is no proposal to appropriate the systems as a part of the extension of services, and the Act does not require that they be purchased. Furthermore, there is no requirement that a municipality duplicate services, in an area to be annexed, which are already available in the area. The town of Beaufort proposes at some future time to install a modern system, according to current standards of health and sanitation, and it is logical to conclude that there is no present intention to acquire the ownership of these gravity outfall systems, even though they are of the same type as those presently owned by the town. Appellants' exceptions are not well taken.

However, there remains the question as to whether or not the court below had the authority to carve out and order annexed portions of the area which the ordinance purported to incorporate within the limits of the town, and remand the ordinance as to the remainder. The acts of the court are judicial in nature; the adoption of an ordinance by the governing body of a municipality is a legislative act. Certainly, in the absence of statutory directive, the court cannot divide the territory, annex a part and refuse to annex the remainder. The court may enter such judgments as are outlined in G.S. 160-453.6(g).

There are two provisions of the statute which permit the court to divide an area and order an annexation of a portion. G.S. 160-453.6(e) provides that, pending the outcome of review, the court may make an order staying the operation of the annexation ordinance, and in the stay order "may permit annexation of any part of the area . . . concerning which no question for review has been raised." In the record on this appeal there is an order which stays the operation of the ordinance as to the entire area pending review. So this provision of the statute has no application to the division made in the review judgment. It is provided in G.S. 160-453.6(h) that any party to the review proceedings may appeal to the Supreme Court, and "that the superior court may, with the agreement of the municipality, permit annexation to be effective with respect to any part of the area concerning which no appeal is being made. . . ." There was an appeal to Supreme Court with respect to tracts One and Two, and therefore the order annexing these tracts as a portion only of the area was improper. Furthermore, there is no showing that it was done "with the agreement of the mu-

nicipality." The ordinance should have been remanded with respect to the entire area.

This cause is remanded to the superior court with direction that it enter a judgment remanding the annexation ordinance to the governing board of the town of Beaufort (1) for *specific findings* that the area to be annexed is developed for urban purposes, as required by the Act, (2) for plans for extension of sewerage to the area to be annexed, and (3) for amendment of the boundaries of the area to be annexed, if such is necessary in making the area comply with G.S. 160-453.4, or if necessary in meeting the requirements for extending sewerage, but in no event to add territory to the area as originally described, G.S. 160-453.6(g) (2); all subject to action by the governing board within three months, as provided in G.S. 160-453.6(g).

Error and remanded.